**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | 1:05-CR-68-SEB-KPF-1 |
| | ) | |
| CHARLES A. BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**Entry Denying Motion for New Trial**

Defendant Charles Brown seeks a new trial pursuant to Rule 33 of the *Federal Rules of Criminal Procedure*. Brown argues that he has obtained new evidence and that in the interest of justice, the court should vacate the judgment and grant him a new trial. Specifically, Brown argues that the recently acquired affidavit of April Propes casts a different light on the evidence presented in this case and creates a reasonable doubt which had not previously existed. Brown argues that on the basis of this "new evidence" the judgment entered in this case should be vacated and a new trial conducted. The government has opposed this motion arguing that the information provided by Propes is not newly discovered evidence, is neither material or likely to lead to an acquittal in the event of a new trial, and disputes that Propes' trial testimony was untruthful.

For the reasons explained below, Brown's motion for a new trial [70] is **denied.**

**Background**

On May 4, 2005, a federal grand jury, sitting in Indianapolis, charged Brown with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). After a two-day trial, a jury convicted Brown of that charge on October 13, 2005, and he was subsequently sentenced by this court to 264 months imprisonment. Not satisfied that his conviction and sentence were proper, Brown appealed to the Seventh Circuit. *See United States v. Brown*, 214 Fed. Appx. 618 (7th Cir. 2007). The Seventh Circuit affirmed both his conviction and sentence. *Id.*

The evidence against Brown presented at trial was overwhelming. The Seventh Circuit summarized the record as follows:

> Just before midnight on March 7, 2005, Donald Hawk, a deputy sheriff in Marion County, Indiana, responded to a 911 dispatch regarding a break-in at the apartment of April Propes, a former girlfriend of Brown. As Deputy Hawk shined his flashlight through the broken glass in the back door of the

apartment, he saw someone in dark clothing moving through the apartment. Hawk entered the apartment, then saw a man, later identified as Brown, exit a bedroom wearing a t-shirt and boxer shorts. Propes, who had hidden in her locked bedroom with her two-year-old daughter, Anha, after calling 911, opened her bedroom door once she realized that the police had arrived. Deputy Hawk asked Propes whether Brown was supposed to be there, and she said no.

Propes and Brown lived together previously, and Brown fathered Anha. The romantic relationship had ended in 2003, but in February 2005 Propes allowed Brown to stay at her apartment temporarily. Brown, though, reneged on a promise to pay some expenses, so Propes told him to move out and he did. Brown broke into the apartment approximately one week later.

When Propes told Deputy Hawk that Brown was not supposed to be in her apartment, Hawk placed Brown under arrest. As Brown got dressed, Hawk noticed a handgun case among his clothing, which prompted a search. He found a knife case, a rope, a pair of gloves, and a loaded gun; the gun was found in a crib in the bedroom from which Brown emerged after Hawk had entered the apartment. Propes had not seen any of these items before and did not know how they got into her apartment.

*U.S. v. Brown*, 214 Fed. Appx. 618, 619, 2007 WL 173828, 1 (7th Cir. 2007).

**Propes' Affidavit**

Propes testified at trial and before the grand jury that indicted Brown. Propes' post-trial affidavit states that she is not certain that the gun, a .38 revolver, she found in her daughter's crib on the evening of March 7, 2005, "belonged" to Brown. She explains:

I started to seriously question whether the .38 revolver I found was actually his or one of my friends who came over to the apartment on a regular basis. It's very possible the gun didn't belong to Charles [Brown] and belonged to one of my friends instead. At the time Charles was arrested, I hung around several people who regularly carried guns and those people came in and out of my house on a regular basis. Since I had a pretty good idea what type of gun Charles kept, because I'd seen it before, I don't believe the .38 was his.

Affidavit, dkt 72 at ¶7. Propes' affidavit also seeks to "clear the record," and states, contrary to her trial and grand jury testimony, that she "did not see Charles come out of [her daughter's] room that night." *Id.* at ¶ 9. The former statement does not appear to contradict either Propes' grand jury or trial testimony, however her latter statement obviously does.

2

## Standard of Review

Brown's motion is brought pursuant to Rule 33 of the *Federal Rules of Criminal Procedure* which provides that the court on motion of a defendant "may vacate any judgment and grant a new trial if the interest of justice so requires." The Seventh Circuit has explained:

> To obtain a new trial based on newly discovered evidence, [the defendant] must show that the evidence (1) was discovered after trial; (2) could not have been discovered sooner with due diligence; (3) was material and not simply impeaching or cumulative; and (4) if presented at a new trial would "probably result in acquittal."

*U.S. v. Reyes*, 542 F.3d 588, 595 (7th Cir. 2008) (citing *United States v. Palivos*, 486 F.3d 250, 255 (7th Cir. 2007)). A motion for a new trial premised on an allegation of false testimony is subject to a more focused analysis that asks whether:

> (a) [t]he court is reasonably well satisfied that the testimony given by a material witness is false[;]
>
> (b) [t]he jury might have reached a different conclusion absent the false testimony or if it had known that testimony by a material witness was false [; and]
>
> (c) [t]he party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after the trial.

*U.S. v. Bender,* 539 F.3d 449, 456 (7th Cir. 2008); *U.S. v. Van Daal Wyk,* 840 F.2d 494, 500 (7th Cir. 1988)).

## Discussion

Propes' affidavit provides two statements which must be addressed. First, she speculates that someone else besides Brown could have placed the loaded gun in the crib in her daughter's bedroom. Next, she states that she did not see Brown coming out of her daughter's room the night of March 7, 2005. Each statement will be addressed in turn.

### A.

Brown argues that Propes' affidavit is significant because for the first time, Propes has offered an explanation as to how someone other than Brown could have placed the loaded gun in the crib in the bedroom without her knowledge.

In her affidavit, Propes states she has come to "seriously question whether the .38

3

revolver [she] found was actually [Brown's] or one of [her] friends that came over to the apartment on a regular basis." Affidavit ¶ 7. Propes explains that she "hung around several people who regularly carried guns and those people came in and out of my house on a regular basis." Propes bases her uncertainty on the fact that, while she knew Brown "to have a gun on occasion, I'd never observed him with the .38 revolver I found that night." Affidavit at ¶ 6.

The government argues that Brown confuses Propes speculation with newly discovered evidence. As the government correctly points out Propes' affidavit does not differ significantly from her trial testimony with respect to where the weapon came from. Propes testified at trial that she had never seen the firearm before March 7, 2005. Propes also told the jury that she had been in her daughter's room two days before Brown's break-in and had not seen the gun in there at that time and further testified that she had not placed the .38 in her daughter's crib. At no time did Propes testify that she knew or even believed the .38 belonged to Brown. Propes simply testified that she discovered the .38, which she had never seen before, in her daughter's crib while helping officers search for a firearm. The government's argument is persuasive. Propes' affidavit offers no new, direct knowledge or information about how the .38 got into the crib. The only direct knowledge Propes had about the .38 was presented to the jury at trial.

The fact that the affidavit does not contain newly discovered evidence is sufficient to deny Brown's motion for a new trial, but even if the affidavit could be considered newly discovered evidence, Brown's motion still fails. First, he cannot show that the new evidence was discovered only after trial and could not have been discovered sooner with reasonable diligence. Given Brown's relationship with Propes and the fact that he had been staying at her apartment as recently as a week before the March 7, 2005, break-in, Brown was in as good a position as anyone to know about the people Propes associated with and allowed in her apartment. Brown could have asked Propes if it was possible that the gun could have been placed there by some unknown person, but he did not do so. Instead, through defense counsel's cross examination of Propes, Brown suggested that Propes herself had purchased the .38 on an earlier date and placed the gun in the crib while police officers were looking elsewhere in the apartment. During closing arguments, defense counsel clearly advanced the theory that Propes or someone else put the .38 in the crib, but the jury did not accept this theory of defense.

Second, Brown has not demonstrated that if the information presented in Ms. Propes affidavit was presented at a new trial that the trial would probably result in acquittal. *United States v. Kamel*, 965 F.2d 484, 490 (7th Cir. 1990) ("[a] new trial will be granted only if the newly discovered evidence would probably lead to an acquittal in the event of a retrial." *Id.*) The evidence presented at trial of Brown's guilt was overwhelming. Deputy Donald Hawk of the Marion County Sheriff's Department told the jury that when he arrived at Propes' apartment on March 7, 2005, he observed Brown emerging from the area of Bedroom 2, which Propes identified as her daughter's room. Hawk also explained to the jury that Brown's clothes, a pair of brown jersey gloves, a handgun case, and the .38 were ultimately recovered from Propes' daughter's bedroom. At trial, Brown's uncle testified that the rope

4

and gloves found in Propes apartment were similar to items Brown had in his possession earlier in the day when moving some heavy items across town. TTvol. II at 41-43.

Propes knew Brown to possess a firearm. It was Brown and not one of Propes' other friends that broke into her apartment on the night of March 7, 2005, and other items linking Brown to the firearm were found in the same room as the .38. Under those circumstances, even the statement by Propes that someone else could have possibly placed the .38 in the crib would not overcome the substantial evidence of Brown's possession of the firearm on March 7, 2005. Propes' speculation in that regard does not warrant a new trial.

**B.**

Propes' statement in her affidavit that she "did not see Charles come out of [her daughter's] room that night" has been considered. Although this statement is contrary to her trial and grand jury testimony, it is insufficient to warrant a new trial.

As stated above, before granting a new trial premised on an allegation of false testimony the court should be reasonably well satisfied that the testimony given by a material witness is false. In light of the evidence presented at trial, the court is not satisfied that the testimony given by Propes at trial was indeed false. Propes' testimony at trial was consistent with her grand jury testimony[1] and was supported by Deputy Hawk, who also testified that he observed Brown emerging from the area of "Bedroom 2". Brown was undressed when he was seen by Propes and encountered by Hawk, and a pile of Brown's

---

[1] On April 20, 2005, less than two months after the incident in question, Propes testified under oath before a federal grand jury. On direct exam, and after a recording of Propes' 911 call from March 7, 2005, was introduced and played for the jury, the following exchange occurred between the Assistant United States Attorney and Propes:

| | |
|---|---|
| AUSA: | What did you do after hanging up the phone [with the 911 operator], after hanging up? |
| Propes: | I heard the policeman announce themselves and I looked out my door. |
| AUSA: | Did you open the door? |
| Propes: | Yes. |
| AUSA: | What did you see? |
| Propes: | I saw Charles Brown coming out of my daughter's room. |
| AUSA: | Did you see a police officer as well? |
| Propes: | Yes. |

TT vol. II at 13-14

clothing and brown jersey gloves were indisputably found in the doorway and behind the door of "Bedroom 2."

Even if Propes' trial testimony was false, in that she did not see Brown come out of her daughter's bedroom, the jury would not have reached a different conclusion regarding Brown's guilt absent Propes' testimony or if it knew that she had not seen Brown come out of her daughter's room that night. Deputy Hawk's testimony, along with the pile of Brown's clothing behind the door conclusively and affirmatively answers the more important question of whether Brown was ever in there. In addition, the firearm case on top of Brown's clothing tied him to the .38 in the crib, regardless of whether Propes saw Brown come out of her daughter's bedroom.

## Conclusion

The defendant's motion for a new trial [70] is **denied** because he has neither established that the affidavit provided by Propes is newly discovered evidence or that if it were presented at a new trial that it would result in an acquittal. Further, to the extent that Ms. Propes is alleged to have provided false testimony the court is not satisfied that the testimony she provided at trial is false or that the jury might have reached a different conclusion absent the false testimony.

**IT IS SO ORDERED.**


Date: 05/11/2011

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles Brown
Reg. No. 07835-028
FCI Pekin
P.O. Box 5000
Pekin, IL 61555-5000

gerald.coraz@usdoj.gov